1  Sheryl W. Leichenger (SBN CA 161688)
   sleichenger@selmanlaw.com
2  SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP
   11766 Wilshire Blvd., Sixth Floor
3  Los Angeles, CA 90025-6546
   Telephone:   310.445.0800
4  Facsimile:   310.473.2525

5  James R. Tenero (SBN CA 201023)
   jtenero@selmanlaw.com
6  SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP
   33 New Montgomery, Sixth Floor
7  San Francisco, CA 94105-4537
   Telephone:   415.979.0400
8  Facsimile:   415.979.2099

9  Attorneys for Plaintiff
   GEMINI INSURANCE COMPANY

10

11                     UNITED STATES DISTRICT COURT

12         EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

13

14  GEMINI INSURANCE COMPANY,              Case No.

15            Plaintiff,                   GEMINI INSURANCE
                                           COMPANY'S COMPLAINT
16        v.

17  PALLA FARMS, LLC, DOLE ENTERPRISES,
    INC., and DOES 1 through 20, inclusive,
18
              Defendants.
19

20        Plaintiff GEMINI INSURANCE COMPANY alleges as follows:

21                   **JURISDICTIONAL & VENUE ALLEGATIONS**

22        1.     Plaintiff Gemini Insurance Company ("Gemini") is informed and believes and

23  thereon alleges that jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, since the

24  amount in controversy exceeds $75,000, and there is complete diversity between the parties, as

25  alleged below.

26        2.     Plaintiff Gemini is a Delaware corporation with its principal place of business

27  located at 7233 East Butherus Drive, Scottsdale, AZ 85260-2410.  Gemini is an insurance

28  company which is and was, at all times relevant herein, authorized to transact business in the

*Selman Leichenger Edson Hsu Newman & Moore LLP*
*ATTORNEYS AT LAW*

1

GEMINI'S COMPLAINT

5894 101392 4864-9059-9486 .v3

1   State of California, County of Kern.

2      3.    At all times relevant herein, Plaintiff Gemini is informed and believes and thereon

3   alleges that Defendant Palla Farms, LCC ("Palla Farms") was and is a California limited liability

4   corporation with a principal place of business located at 1904 Wedgemont Place, Bakersfield,

5   Kern County, California.

6      4.    At all times relevant herein, Plaintiff Gemini is informed and believes and thereon

7   alleges that Defendant Palla Farms owns real property, i.e., an orchard, located in Rosedale, Kern

8   County, California (the "Orchard") which Orchard was the subject of an underlying action titled

9   *Palla Farms, LLC, v. Dole Enterprises, Inc.*, Superior Court for the State of California, County

10  of Kern, Case No. S-1500-CV-283013-DRL (the "Underlying Action").

11     5.    At all times relevant herein, Plaintiff Gemini is informed and believes and thereon

12  alleges that Defendant Dole Enterprises, Inc., ("Dole Enterprises") was and is a California

13  corporation having a principal place of business located at 12850 Allen Lane, Bakersfield, Kern

14  County, California.

15     6.    At all times relevant herein, in the Underlying Action, Palla Farms alleged that

16  Dole Enterprises conducted its business operations, i.e., oil exploration/production operations, on

17  or near the Orchard allegedly polluting the groundwater beneath the Orchard.

18     7.    Plaintiff Gemini is unaware of the true identity, nature and capacity of each of the

19  defendants designated herein as DOES 1 through 10.  Plaintiff Gemini is informed and believes

20  and thereon alleges that Defendants DOES 1 through 10 are persons or entities that are insured

21  by, or otherwise claim right to policies of insurance issued by Gemini, and are implicated by the

22  allegations herein.  Upon learning the true identity, nature and capacity of DOE Defendants 1

23  through 10, Plaintiff Gemini will amend this Complaint to allege their true names and capacities.

24     8.    Plaintiff Gemini is unaware of the true identity, nature and capacity of each of the

25  defendants designated herein as DOES 11 through 20.  Plaintiff Gemini is informed and believes

26  and thereon alleges that Defendants DOES 11 through 20 are persons or entities that insured

27  Dole Enterprises and are implicated by the allegations herein.  Upon learning the true identity,

28  nature and capacity of DOE Defendants 11 through 20, Plaintiff Gemini will amend this

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

2

5894 101392 4864-9059-9486 .v3

Complaint to allege their true names and capacities.

9.    Plaintiff Gemini is informed and believes and thereon alleges that, at all material times herein alleged, the Defendants, including the DOE Defendants 1 through 20, and each of them, were the agents, servants, employees, members, associates, shareholders, officers, directors, joint venturers, and/or alter egos of the other Defendants, and each of them.

## GENERAL ALLEGATIONS

1.    **The Gemini Policies**

10.    Gemini issued the following energy commercial general liability insurance policies to named insured, "Dole Enterprises, Inc." for the following policy periods:

       (a) Gemini Policy No. JGD2700210  (09/17/2011 – 09/17/2012);

       (b) Gemini Policy No. JGD2700500  (09/17/2012 – 09/17/2013);

       (c) Gemini Policy No. JGD2700807  (09/17/2013 – 09/17/2014); and

       (d) Gemini Policy No. JGD2701109  (09/17/2014 – 09/17/2015)

       (collectively, hereinafter, the "Primary Policies").

11.    Gemini issued the following energy commercial umbrella liability insurance policies to named insured, "Dole Enterprises, Inc." for the following policy periods:

       (a) Gemini Policy No. JUD2700255  (04/11/2012 – 09/17/2012);

       (b) Gemini Policy No. JUD2700347  (09/17/2012 – 09/17/2013);

       (c) Gemini Policy No. JUD2700562  (09/17/2013 – 09/17/2014);

       (d) Gemini Policy No. JUD2700785  (09/17/2014 – 09/17/2015)

       (collectively, hereinafter, the "Excess Policies").

2.    **The Underlying Action.**

12.    On or about September 15, 2014, Palla Farms sued Dole Enterprises in the Underlying Action; a true and correct copy of which is attached hereto as **EXHIBIT A**.

13.    In the Underlying Action and in part, Palla Farms alleged that Dole Enterprises was an oil company that caused environmental damage to the Orchard and to water beneath the Orchard during its oil production and waste disposal processes.

    / / /

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3

5894 101392 4864-9059-9486 .v3

14.     On or about September 17, 2014, Dole Enterprises tendered defense of the Underlying Action to its liability insurers, including, but not limited to, Gemini.

15.     By a December 23, 2014 correspondence, Gemini denied owing Dole Enterprises defense against or indemnity in the Underlying Action.  In principal part, Gemini advised Dole Enterprises that the alleged loss did not come within the insuring agreement of the Primary Policies as it did not qualify as an Eligible Pollution Incident and the Pollution Exclusion fully removed any potential for coverage.

16.     In  or about October 13, 2021, Palla Farms filed a second amended complaint in the Underlying Action; a true and correct copy of which is attached hereto as **EXHIBIT B**;

17.     In its Second Amended Complaint, Palla Farms alleged, in part:

> 4.     Palla Farms planted cherry trees in one of their Rosedale orchards, relying upon availability of fresh water from the underlying aquifer.  Cherry trees take several years before bearing any fruit and before they reach a peak for fruit production.
>
> * * *
>
> 10.     Beginning in 2012, the surrounding almond orchard also began experiencing serious problems as well: production began declining and continued to decline.
>
> 11.     In trying to save the cherry trees, Palla Farms discovered the aquifer contained extremely high amounts of salt (total dissolved solids, "TDS").  Salt water pulled up during oil production contains extremely high amounts of TDS and high concentrations of sodium chloride and boron.  High total salts reduce tree growth.  All three are toxic to cherries and almonds.  [...]."
>
> * * *
>
> 14.     Palla Farms ultimately was forced to remove the dying cherry orchard in 2013.  Given the damage, the cherry trees could not be restored to economic viability.
>
> 15.     Palla Farms ultimately retained counsel to investigate the problems and then learned that oil companies operating near Palla Farms, including Defendant Dole Enterprises, Inc., ("Dole"), *disposed of millions of gallons of salt water near Palla Farms*.  Salt water from Dole's oil operations invaded the fresh water supply beneath Palla Farms, causing damage to Palla Farms' property, including its fruit trees.
>
> * * *
>
> 23.     Dole disposed of the salt water it extracted by transporting it through underground pipelines and into saltwater injection wells near Palla Farms.  These saltwater injection wells were re-worked from old idle wells that were often damaged and idle.  Dole did not remove the salt and boron from the produced water before injecting it, and thus all naturally occurring chemicals including sodium chloride and boron remained in the salt water.

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

4

5894 101392 4864-9059-9486 .v3

* * *

25.    Palla Farms brings this lawsuit to recover the losses it sustained as a result of Dole's injection of saltwater into Palla Farm's freshwater used to irrigate its orchards. These losses include but are not limited to past fruit and nut yield losses, remedial repairs, tree removal and replacement, and piping in water from an alternative source. Palla Farms further seeks diminution in property value, disgorgement of Dole's associated profits, and costs of repair, mitigation, and remediation.

* * *

18.    In support of its negligence cause of action, Palla Farms more specifically alleged against Dole Enterprises:

49.    At all times alleged in this Complaint, Palla Farms owned an orchard within a short distance of the storage tanks, pipelines, and waste disposal wells used by Defendants. Defendants have a duty to use reasonable care in the transporting of the salt water, and in the construction, drilling, operation, maintenance, and abandonment of all operations. However, Defendants built their waste disposal wells in direct contradiction to established industry standards.

50.    Defendants also breached their duty by negligently and carelessly constructing, drilling, operating, maintaining and/or abandoning underground injection wells, pipelines, and storage tanks, and thus they caused releases, spills, emissions, and discharges of hazardous waste, including saltwater, on Palla Farms' orchard (either directly from surface activities or leakage from pipelines or wells or through subsurface trespass).

51.    This breach directly increased the concentration of chemicals, like chlorine, in Palla Farms' water to such an extent that trees in Palla Farms' orchard were injured, and fruit production diminished. Palla Farms was forced to remove fruit trees that could not withstand the high levels of chloride.

52.    [...] As a direct result of this wrongful conduct, Palla Farms suffered economic damages beginning when chloride levels in the water reached a peak in 2012 continuing through 2019 as a result of continuing waves of chloride problems. This includes, but is not limited to, costs incurred in removing trees, planting new trees, drilling new water pipeline for remediation and to the groundwater, lost and/or diminished uses of the property, loss of earnings capacity of the property, loss of the investment places into the orchards, and loss of past income from the cherry, almond, and pistachio trees.

* * *

54.    As a further legal result of this wrongful conduct, Palla Farms suffered the loss of the quiet use and enjoyment of its property in addition to all of Palla Farms' general damages. Palla Farms' damages total no less than $6 million, and will be fully determined according to proof at trial.

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

5894 101392 4864-9059-9886 .v3

19.    On or about November 5, 2021, Dole Enterprises tendered defense of the Second Amended Complaint filed in the Underlying Action to Gemini.

20.    Gemini is informed and believes and thereon alleges that Dole Enterprises' 2004 - 2009 insurer, Chubb Custom Insurance Company ("Chubb"), defended Dole Enterprises against the Underlying Action.

**3.    The Underlying Judgment.**

21.    On or about September 20, 2022, a Judgment by Court was entered against Dole Enterprises in the Underlying Action; a true and correct copy of which is attached hereto as **EXHIBIT C.**

**4.    Gemini's Coverage Position.**

It has been and remains Gemini's position that it did not owe Dole Enterprises a defense against the Underlying Action and that it does not owe its insured, Dole Enterprises, or Palla Farms, either as an assignee of Dole Enterprises' rights (if any) or as a third-party judgment creditor under California Insurance Code, § 11580, indemnity for the Judgment entered in the Underlying Action.

**a.    The Primary Policies: Pollution Clean Up Costs.**

22.    In relevant part, the Primary Policies contain "Pollution Clean Up Costs" coverage pursuant to the following provision:

**II.    COVERAGES AND DUTY TO DEFEND**

*   *   *

**B.    Pollution Clean Up Costs**

**WE** will pay the amounts that **YOU** voluntarily incur or become legally obligated to pay as **POLLUTION CLEAN UP COSTS** because of a **POLLUTION INCIDENT** which has commenced at or from **YOUR OIL OR GAS SITE** or **YOUR WORK** at an **OIL OR GAS SITE**, provided the **ELIGIBLE POLLUTION INCIDENT** requirements are met:

1.    The **POLLUTION INCIDENT** is both unexpected and unintended from the standpoint of the **INSURED**;

2.    The **POLLUTION INCIDENT** commenced abruptly and instantaneously and can be identified as having first commenced

6

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

5894 101392 4864-9059-9086 .v3

during the policy period;

3.  The **POLLUTION INCIDENT** was known by any **INSURED, AGENT, OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** within 30 days of the date the **POLLUTION INCIDENT** first commended; and

4.  The **POLLUTION INCIDENT** was reported to **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable but no later than 90 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

    However, if **YOU** own a **NON-OPERATING WORKING INTEREST** in an **OIL OR GAS SITE** that has a **POLLUTION INCIDENT**, **YOU** must report to **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable but no later than 120 days form the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

23.  In relevant part and with respect to "Pollution Clean Up Costs" coverage, the Primary Policies further provide in relevant part:

**III.  WHEN THERE IS COVERAGE**

A.  This policy applies to Bodily Injury and Property Damage Liability, Pollution Clean Up Costs, and Personal and Advertising Injury Liability only if:

1.  The **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** is caused by an **OCCURRENCE** or offense, or the **POLLUTION CLEAN UP COSTS** are caused by an **ELIGIBLE POLLUTION INCIDENT** that takes place in the Coverage Territory described in Section IV. Coverage Territory;

    * * *

3.  The **POLLUTION INCIDENT** commences during the policy period;

    * * *

5.  Prior to the policy period, no **INSURED, AGENT, OPERATOR,** or **OIL OR GAS SITE CONTRACTOR** knew that the **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** had commenced, in whole or in part. If any **INSURED, AGENT, OPERATOR,** or **OIL OR GAS SITE CONTRACTOR** knew, prior to the policy period, that the **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** commenced, then any continuation, change, or resumption of **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** during or after the policy period will be deemed to have been known prior to the policy period.

    * * *

24.  In relevant part and with respect to "Pollution Clean Up Costs" coverage, the

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

7

5894 101392 4864-9059-9486 .v3

Primary Policies further provide in relevant part:

> ## II.   COVERAGES AND DUTY TO DEFEND
> \* \* \*
>
> ### E.   Duty to Defend
>
> **WE** will have the right and Duty to Defend the **INSURED**, including without limitation, to appoint counsel to represent the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT**, to which this policy applies. However, **WE** will have no Duty to Defend the **INSURED** against ay **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS**, to this this insurance does not apply.

25.   Under the Primary Policies, **POLLUTION CLEAN UP COSTS** means:

> **POLLUTION CLEAN UP COSTS** means reasonable expenses incurred to investigate, quantify, monitor, abate, remove, dispose, treat, neutralize, or immobilize **POLLUTANTS**.  Reasonable expenses shall not include:
>
> **a.**   Any additional loss, cost, or expense incurred for the processing, reclamation, recovery, separation, or salvage of oil or gas in order to sell, distribute, use, or store the oil or gas; or
>
> **b.**   Any loss, cost, or expense for the removal of wreckage or debris of **YOUR** oil or gas platform, arising from a **NAMED STORM**.

26.   Under the Primary Policies, **POLLUTION INCIDENT** means:

> **POLLUTION INCIDENT** means the emission, discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS**.

27.   Under the Primary Policies, **ELIGIBLE POLLUTION INCIDENT** means:

> **ELIGIBLE POLLUTION INCIDENT** means any **POLLUTION INCIDENT** that meets the following requirements:
>
> **a.**   The **POLLUTION INCIDENT** is both unexpected and unintended from the standpoint of the **INSURED**;
>
> **b.**   The **POLLUTION INCIDENT** commenced abruptly and instantaneously and can be identified as having first commenced during the policy period;
>
> **c.**   The **POLLUTION INCIDENT** was known by any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** within 30 days of the date the **POLLUTION INCIDENT** first commenced; and
>
> **d.**   The **POLLUTION INCIDENT** was reported to **BERKLEY OIL**

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

8

5894 101392 4864-9059-9886 .v3

**& GAS SPECIALTY SERVICES, LLC** as soon as practicable but no later than 90 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**. However, if **YOU** own a **NON-OPERATING WORKING INTEREST** in an **OIL OR GAS SITE** that has a **POLLUTION INCIDENT, YOU** must report to **BERKLEY OIL & GAS SPECIALTY, SERVICES, LLC** as soon as practicable but no later than 120 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

28.    Under the Primary Policies, **POLLUTANTS** means:

**POLLUTANTS** means any solid, liquid, gaseous, or thermal irritant or contaminant, including, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and **WASTE**.

29.    Under the Primary Policies, **WASTE** means:

**WASTE** means discarded, unusable, or unwanted substances or materials and includes materials to be disposed of, recycled, reconditioned, or reclaimed. Fluids or substances, including, but not limited to, drilling mud, saltwater, and produced fluids, injected or recovered from the **WELL BORE** at an **OIL OR GAS SITE**, will not be included in the meaning of **WASTE**.

30.    In addition to the above-quoted insuring agreement and definitions, the following exclusion applies to "Pollution Clean Up Costs" coverage. "This policy does not apply to:"

**6.    Fines or Penalties:**

Any criminal, civil or administrative fine or penalty. This Exclusion does not apply to punitive or exemplary damages, if insuring such damage is not illegal or against public policy under the law of the jurisdiction or against public policy under the law of the jurisdiction pursuant to which this policy is construed

31.    In addition to the above-quoted insuring agreement and definitions, the following exclusion applies to "Pollution Clean Up Costs" coverage. "This policy does not apply to:"

**2.    Failure to Comply with Laws:**

**POLLUTION CLEAN UP COSTS** arising out of or resulting from any failure to comply with any law, statute, regulation, ordinance, governmental directive, or order; provided that such failure is a willful or deliberate act or omission by or on behalf of the INSURED.

32.    In addition to the above-quoted insuring agreement and definitions, the following exclusion applies to "Pollution Clean Up Costs" coverage. "This policy does not apply to:"

GEMINI'S COMPLAINT

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

| **3.** | **Waste:** |
|---|---|

POLLUTION CLEAN UP COSTS arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of POLLUTANTS which are or were at any time transported, handled, stored, treated, disposed of, or processed as WASTE.

33.     In addition to the above-quoted insuring agreement and definitions, the following exclusion applies to "Pollution Clean Up Costs" coverage. "This policy does not apply to:"

| **4.** | **Waste Site, Abandoned Premises , or Underground Storage Tanks**: |
|---|---|

POLLUTION CLEAN UP COSTS arising out of or in any way related to any actual, alleged, or threatened POLLUTION INCIDENT at, from, or related to any:

**a.**     WASTE SITE;

**b.**     Premises, site, or location any INSURED has sold, given away, or abandoned; or

**c.**     UNDERGROUND STORAGE TANKS.

34.     Under the Primary Policies, WASTE SITE means:

WASTE SITE means a site or any part of a site which is or was used for handling, treatment, storage, disposal, or processing of WASTE. Saltwater injection wells or saltwater disposal wells at premises YOU own, lease, or rent shall not be included in the meaning of WASTE SITE.

35.     Under the Primary Policies, UNDERGROUND STORAGE TANKS means:

UNDERGROUND STORAGE TANKS means any tank, vessel, or storage facility, including associated piping and equipment connected to such tank, vessel, or storage facility, buried below the surface of the ground or water, or which at any time had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of the tank, is below the surface of the ground or water.

36.     Under the Primary Policies, Supplementary Payments, section A(4), provides:

| **VI.** | **SUPPLEMENTARY PAYMENTS** |
|---|---|

**A.**     WE will pay, with respect to any CLAIM WE investigate or settle, or any SUIT against an INSURED WE defend:

* * *

**4.**     **Court Costs:**

10

All Court Costs taxed against the **INSURED** in the **SUIT**. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **INSURED**.

**b.** **The Primary Policies: Bodily Injury and Property Damage Liability.**

37.     In relevant part, the Primary Policies contain "Bodily Injury and Property Damage Liability" coverage pursuant to the following provision:

**II.    COVERAGES AND DUTY TO DEFEND**

**A.    Bodily Injury and Property Damage Liability**

**WE** will pay the amounts that an **INSURED** becomes legally obligated to pay as damages because of **BODILY INJURY** or **PROPERTY DAMAGE** caused by an **OCCURRENCE** for which this policy applies.

38.     In relevant part and with respect to "Bodily Injury and Property Damage Liability" coverage, the Primary Policies further provide in relevant part:

**III.    WHEN THERE IS COVERAGE**

**A.**    This policy applies to Bodily Injury and Property Damage Liability, Pollution Clean Up Costs, and Personal and Advertising Injury Liability only if:

1.    The **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** is caused by an **OCCURRENCE** or offense, or the **POLLUTION CLEAN UP COSTS** are caused by an **ELIGIBLE POLLUTION INCIDENT** that takes place in the Coverage Territory described in Section IV. Coverage Territory;

2.    The **BODILY INJURY, PROPERTY DAMAGE** or **PERSONAL AND ADVERTISING INJURY** occurs during the policy period;
        * * *

4.    Prior to the policy period, no **INSURED** and no **EMPLOYEE**, authorized by **YOU** to give or receive notice of an **OCCURRENCE**, offense, or **CLAIM**, knew that the **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** had occurred, in whole or in part. If such an **INSURED** or authorized **EMPLOYEE** knew, prior to the policy period, that the **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** occurred, then any continuation, change, or resumption of such **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** during or

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

11

5894 101392 4864-9059-9486 .v3

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

after the policy period, will be deemed to have been known prior to the policy; and
* * *

39.     In relevant part and with respect to "Bodily Injury and Property Damage Liability" coverage, the Primary Policies further provide in relevant part:

> II.     **COVERAGES AND DUTY TO DEFEND**
> * * *
> E.     **Duty to Defend**
>
> **WE** will have the right and Duty to Defend the **INSURED**, including without limitation, to appoint counsel to represent the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT**, to which this policy applies. However, **WE** will have no Duty to Defend the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS**, to this this insurance does not apply.

40.     Under the Primary Policies, **PROPERTY DAMAGE** means:

> **PROPERTY DAMAGE** means:
>
> a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **OCCURRENCE** that caused it.

41.     Under the Primary Policies, **OCCURRENCE** means:

> **OCCURRENCE** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

42.     In addition to the above-quoted insuring agreement and definitions, the following exclusion applies to "Bodily Injury and Property Damage Liability" coverage. "This policy does not apply to:"

> 6.     **Fines or Penalties:**
>
> Any criminal, civil or administrative fine or penalty. This Exclusion does not apply to punitive or exemplary damages, if insuring such damage is not illegal or against public policy under the law of the jurisdiction or against public policy

12

5894 101392 4864-9059-9486 .v3

under the law of the jurisdiction pursuant to which this policy is construed.

43.     In addition to the above-quoted insuring agreement and definitions, the following exclusion applies to "Bodily Injury and Property Damage Liability" coverage.  "This policy does not apply to:"

**13.   Pollution:**

a.      **BODILY INJURY** or **PROPERTY DAMAGE** arising out of or resulting from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS**:

(1)     At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any **INSURED**.  However, this Subparagraph (1) does not apply to:

(i)     **BODILY INJURY** if sustained within a building and because of smoke, fumes, vapor, or soot produced by or originating from equipment that is used to heat, cool, or dehumidify the building or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii)    **BODILY INJURY** or **PROPERTY DAMAGE** for which **YOU** may be held liable, if **YOU** are a contractor and the owner or lessee of such premises, site, or location has been asses to **YOUR** policy as an Additional Insured with respect to **YOUR** ongoing operations performed for that Additional Insured at that premises, site, or location; and such premises, sire, or location is not and never was owned or occupied by, or rented or loaned to, any **INSURED**, other than that Additional Insured.

(iii)   **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke, or fumes from a **HOSTILE FIRE**; or

(iv)    **BODILY INJURY** or **PROPERTY DAMAGE** arising out of an **ELIGIBLE POLLUTION INCIDENT**.

(2)     At or from any premises, site, or location which is or was at any time used by or for any **INSURED** or others for the handling, storage, disposal, processing, or treatment of **WASTE**;

(3)     Which are or were at any time transported, handled, stored, treated, disposed of, or processed as **WASTE** by or for:

13

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

     **(i)**    Any **INSURED**; or

     **(ii)**    Any person or organization for whom **YOU** may be legally responsible;

**(4)**    At or from any premises, site, or location on which any **INSURED** or any contractors or subcontractors working directly or indirectly on any **INSURED**'s behalf are performing operations if the **POLLUTANTS** are brought on or to the premises, site, or location in connection with such operations by such **INSURED**, contractor, or subcontractor.  However, this Subparagraph (4) does not apply to:

     **(i)**    **BODILY INJURY** or **PROPERTY DAMAGE** arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of **MOBILE EQUIPMENT** or its parts, if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such **INSURED**, contractor, or subcontractor.

     **(ii)**    **BODILY INJURY** or **PROPERTY DAMAGE** sustained within a building and caused by the release of gases, fumes, or vapors from materials brought into that building in connection with operations being performed by **YOU** or on **YOUR** behalf by a contractor or subcontractor;

     **(iii)**    **BODILY INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke, or fumes from a **HOSTILE FIRE**; or

     **(iv)**    **BODILY INJURY** or **PROPERTY DAMAGE** arising out of an **ELIGIBLE POLLUTION INCIDENT**;

**(5)**    At or from any premises, site, or location on which any **INSURED** or any contractors or subcontractors working directly or indirectly on any **INSURED**'s behalf are performing operations if the operations are to identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or mitigate, or in any way respond to or assess the effects of **POLLUTANTS**; or

**(6)**    At or from any **UNDERGROUND STORAGE TANK**.

**b.**    Any loss, cost, or expense arising out of any:

    **(1)**    Request, demand, order, or statutory or regulatory

14

5894 101392 4864-9059-9186 .v3

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

requirement that any **INSURED** or others to identify, abate, test for, sample, monitor, clean up, remove, cover contain, treat, detoxify, decontaminate, neutralize, mitigate, or in any way respond to or assess the effects of **POLLUTANTS**; or

    **(2)**    **CLAIM, SUIT**, or proceeding by or on behalf of a governmental authority for damages because of identification of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, mitigating, or in any way responding to or assessing the effects of **POLLUTANTS**.

However, this Subparagraph (b) does not apply to liability for damages because of **PROPERTY DAMAGE** that the **INSURED** would have in the absence of such request, demand, order, or statutory or regulatory requirement, or such **CLAIM** or **SUIT** by or on behalf of a governmental authority.

44.    Under the Primary Policies, Supplementary Payments, section A(4), provides:

**VI.**    **SUPPLEMENTARY PAYMENTS**

    **A.**    **WE** will pay, with respect to any **CLAIM WE** investigate or settle, or any **SUIT** against an **INSURED WE** defend:

                    \* \* \*

    **4.**    **Court Costs:**

    All Court Costs taxed against the **INSURED** in the **SUIT**. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **INSURED**.

**b.**    **The Excess Policies.**

45.    In relevant part, the Excess Policies contain "Coverage A – Excess Follow Form Liability Insurance" coverage pursuant to the following provision:

**I.**    **COVERAGES**

    **A.**    **Coverage A – Excess Follow Form Liability Insurance**

    Subject to all of the terms and conditions applicable to Coverage A – Excess Follow Form Insurance, **WE** will pay on behalf of the **INSURED**, those damages of **POLLUTION CLEAN UP COSTS** covered by this policy in excess of the total applicable limits of **UNDERLYING INSURANCE**. With respect to Coverage A, the terms and conditions of **UNDERLYING INSURANCE** are made part of this policy, except with respect to:

    **1.**    Any contrary provision contained in this policy; or

    **2.**    Any provision in this policy for which a similar provision is not contained in **UNDERLYING INSURANCE**.

15

5894 101392 4864-9059-9886 .v3

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

With respect to the exceptions stated above, nothing contained therein will serve to make this policy broader than the **UNDERLYING INSURANCE**.

If **UNDERLYING INSURANCE** does not apply to damages or **POLLUTION CLEAN UP COSTS**, for reasons other than exhaustion of applicable Limits Of Insurance by payment of CLAIMS, settlements, or judgments, then Coverage A does not apply to those damages or **POLLUTION CLEAN UP COSTS**.

46.    Under the Excess Policies, **POLLUTION CLEAN UP COSTS** means:

**POLLUTION CLEAN UP COSTS** means reasonable expenses incurred to investigate, quantify, monitor, abate, remove, dispose, treat, neutralize, or immobilize **POLLUTANTS**. Reasonable expenses shall not include:

    a.    Any additional loss, cost, or expense incurred for the processing, reclamation, recovery, separation, or salvage of oil or gas in order to sell, distribute, use, or store the oil or gas; or

    b.    Any loss, cost, or expense for the removal of wreckage or debris of **YOUR** oil or gas platform, arising from a **NAMED STORM**.

47.    Under the Excess Policies, **UNDERLYING INSURANCE** means:

**UNDERLYING INSURANCE** means the policy or policies of insurance listed in the Schedule of **UNDERLYING INSURANCE** forming a part of this policy.

48.    Regarding the Excess Policies, the following chart identifies the Primary Policies that are UNDERLYING INSURANCE with respects to each Excess Policy:

| Policy Period | Excess Policy No. | UNDERLYING INSURANCE |
|---|---|---|
| 04/11/2012 – 09/17/2012 | Gemini Policy No. JUD2700255 | Gemini Policy No. JGD2700210 |
| 09/17/2012 – 09/17/2013 | Gemini Policy No. JUD2700347 | Gemini Policy No. JGD2700500 |
| 09/17/2013 – 09/17/2014 | Gemini Policy No. JUD2700562 | Gemini Policy No. JGD2700807 |
| 09/17/2014 – 09/17/2015 | Gemini Policy No. JUD2700785 | Gemini Policy No. JGD2701109 |

49.    In relevant part, the Excess Policies contain "Coverage B – Umbrella Liability Insurance" coverage pursuant to the following provision:

| I. | **COVERAGES** | |
|---|---|---|
| | | * * * |
| | B. | **Coverage B – Umbrella Liability Insurance** |

16

5894 101392 4864-9059-9486 .v3

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Subject to all of the terms and conditions applicable to Coverage B – Umbrella Liability Insurance, **WE** will pay on behalf of the **INSURED**, those damages the **INSURED** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **INSURED CONTRACT** because of **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL AND ADVERTISING INJURY** covered by this policy. WE will pay such damages in excess of the **SELF-INSURED RETENTION** specified on the Declarations Page or the amount payable by **OTHER INSURANCE,** whichever is greater.

Coverage B will not apply to any **PAYMENT OBLIGATION, CLAIM,** or **SUIT** for which insurance is afforded under **UNDERLYING INSURANCE** or would have been afforded except for the exhaustion of the limits of **UNDERLYING INSURANCE.**

**WE have no obligation under the above Coverages with respect to any CLAIMS or SUIT settled without OUR consent.**

**Other than as provided pursuant to Section VI. Supplementary Payments And Defense, WE have no other obligation or liability to pay sums or perform acts or services.**

50.    In relevant part, the Excess Policies contain the following provision:

**II.    WHEN THERE IS COVERAGE**

A.    This policy applies to Coverage A – Excess Follow Form Liability Insurance and Coverage B – Umbrella Liability Insurance only if:

1.    The **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL AND ADVERTISING INJURY** is caused by an **OCCURRENCE** or offense, or the **POLLUTION CLEAN UP COSTS** are caused by an **ELIGIBLE POLLUTION INCIDENT** that takes place in the Coverage Territory described in Section IV. Coverage Territory;

2.    The **BODILY INJURY, PROPERTY DAMAGE** or **PERSONAL AND ADVERTISING INJURY** occurs during the policy period;

3.    The **POLLUTION INCIDENT** commences during the policy period;

4.    Prior to the policy period, no **INSURED** and no **EMPLOYEE,** authorized by **YOU** to give or receive notice of an **OCCURRENCE,** offense, or **CLAIM,** knew that the **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL AND ADVERTISING INJURY** had occurred, in whole or in part. If such an **INSURED** or authorized **EMPLOYEE** knew, prior to the policy period, that the **BODILY INJURY, PROPERTY DAMAGE,** or

17

5894 101392 4864-9059-9486 .v3

**PERSONAL AND ADVERTISING INJURY** occurred, then any continuation, change, or resumption of such **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL AND ADVERTISING INJURY** during or after the policy period, will be deemed to have been known prior to the policy; and

5.  Prior to the policy period, no **INSURED, AGENT, OPERATOR,** or **OIL OR GAS SITE CONTRACTOR** knew that the **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** had commenced, in whole or in part. If any **INSURED, AGENT, OPERATOR,** or **OIL OR GAS SITE CONTRACTOR** knew, prior to the policy period, that the **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** commenced, then any continuation, change, or resumption of **POLLUTION CLEAN UP COSTS** or the **POLLUTION INCIDENT** during or after the policy period will be deemed to have been known prior to the policy period.

51.    In relevant part, the Excess Policies contain the following provision:

**VI.    SUPPLEMENTARY PAYMENTS AND DEFENSE**

A.    Subject to all of the terms and conditions of this policy, WE will have the right and duty to defend the INSURED:

1.    Under Coverage A – Excess Follow Form Liability Insurance, against any **CLAIM** or **SUIT** seeking damages or **POLLUTION CLEANUP COSTS** arising out of an **ELIGIBLE POLLUTION INCIDENT**, to which this coverage applies, if the applicable underlying limits and the total applicable limits of any **OTHER INSURANCE** have been exhausted by payment of judgments, settlements, or related loss, cost, or expense (if such loss, cost, or expense reduce such limits); or

2.    Under Coverage B – Umbrella Liability Insurance, against a **CLAIM** or **SUIT** to which this policy applies.

B.    **WE** will have no duty to defend the **INSURED** against any **CLAIM** or **SUIT** seeking damages, or **POLLUTION CLEAN UP COSTS**:

1.    To which this policy does not apply; or

2.    If any other insurer has a duty to defend.

\* \* \*

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

18

5894 101392 4864-9059-9486 .v3

52.    Under the Excess Policies, **POLLUTION CLEAN UP COSTS** means:

> **POLLUTION CLEAN UP COSTS** means reasonable expenses incurred to investigate, quantify, monitor, abate, remove, dispose, treat, neutralize, or immobilize **POLLUTANTS**.  Reasonable expenses shall not include:
>
> a.    Any additional loss, cost, or expense incurred for the processing, reclamation, recovery, separation, or salvage of oil or gas in order to sell, distribute, use, or store the oil or gas; or
>
> b.    Any loss, cost, or expense for the removal of wreckage or debris of **YOUR** oil or gas platform, arising from a **NAMED STORM**.

53.    Under the Excess Policies, **POLLUTION INCIDENT** means:

> **POLLUTION INCIDENT** means the emission, discharge, dispersal, seepage, migration, release, or escape of **POLLUTANTS**.

54.    Under the Excess Policies, **ELIGIBLE POLLUTION INCIDENT** means:

> **ELIGIBLE POLLUTION INCIDENT** means any **POLLUTION INCIDENT** that meets the following requirements:
>
> a.    The **POLLUTION INCIDENT** is both unexpected and unintended from the standpoint of the **INSURED**;
>
> b.    The **POLLUTION INCIDENT** commenced abruptly and instantaneously and can be identified as having first commenced during the policy period;
>
> c.    The **POLLUTION INCIDENT** was known by any **INSURED**, **AGENT**, **OPERATOR**, or **OIL OR GAS SITE CONTRACTOR** within 30 days of the date the **POLLUTION INCIDENT** first commenced; and
>
> d.    The **POLLUTION INCIDENT** was reported to **BERKLEY OIL & GAS SPECIALTY SERVICES, LLC** as soon as practicable but no later than 90 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.  However, if **YOU** own a **NON-OPERATING WORKING INTEREST** in an **OIL OR GAS SITE** that has a **POLLUTION INCIDENT**, **YOU** must report to **BERKLEY OIL & GAS SPECIALTY, SERVICES, LLC** as soon as practicable but no later than 120 days from the date of knowledge of the commencement of the **POLLUTION INCIDENT**.

55.    Under the Excess Policies, **POLLUTANTS** means:

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

GEMINI'S COMPLAINT

5894 101392 4864-9059-9886 .v3

**POLLUTANTS** means any solid, liquid, gaseous, or thermal irritant or contaminant, including, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and **WASTE**.

56.     Under the Excess Policies, **WASTE** means:

**WASTE** means discarded, unusable, or unwanted substances or materials and includes materials to be disposed of, recycled, reconditioned, or reclaimed. Fluids or substances, including, but not limited to, drilling mud, saltwater, and produced fluids, injected or recovered from the **WELL BORE** at an **OIL OR GAS SITE**, will not be included in the meaning of **WASTE**.

57.     Under the Excess Policies, **PROPERTY DAMAGE** means:

**PROPERTY DAMAGE** means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **OCCURRENCE** that caused it.

For the purposes of this policy, **ELECTRONIC DATA** is not tangible property.

58.     Under the Excess Policies, **OCCURRENCE** means:

**OCCURRENCE** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

59.     Under the Excess Policies, Supplementary Payment and Defenses, section D(3), provides:

| **VI.** | **SUPPLEMENTARY PAYMENTS AND DEFENSE** |
|---|---|

    * * *

    **D.**    Subject to all of the terms and conditions of this policy, under Coverage A – Excess Follow Form Liability Insurance or Coverage B – Umbrella Liability Insurance:

    **WE** will pay, with respect to any **CLAIM WE** investigate or settle, or any **SUIT** against an **INSURED WE** defend:

    * * *

    **3.**    **Court Costs:**

    All Court Costs taxed against the **INSURED** in the **SUIT**. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **INSURED**.

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

20

GEMINI'S COMPLAINT

5894 101392 4864-9059-9886 .v3

1      60.    In addition to the exclusions quoted above that are followed by the Excess

2   Policies by operation of the follow-form provisions, the Umbrella Policies contain the following

3   exclusion: "The following Exclusions apply to Section I.A. Coverage A – Excess Follow Form

4   Liability Insurance; This policy does not apply to:"

---

**1.    Below Ground Water Resources:**

    **a.**    Damages arising out of a **POLLUTION INCIDENT** affecting; or

    **b.**    **POLLUTION CLEAN UP COSTS**, or any other loss, cost, or expense to abate, test for, sample, monitor, clean up, treat, detoxify, decontaminate, or neutralize;

Below Ground Water Resources, including, but not limited to, aquifers, wells, springs, and underground rivers.

**2.    Voluntary Pollution Clean Up Costs:**

**POLLUTION CLEAN UP COSTS** voluntarily incurred by or on behalf of any **INSURED**. This Exclusion does not apply to **POLLUTION CLEAN UP COSTS** resulting from an **ELIGIBLE POLLUTION INCIDENT** for which **YOU** are legally liable.

---

16      61.    In addition to the exclusions quoted above that are followed by the Excess

17   Policies by operation of the follow-form provisions, the Umbrella Policies contain the following

18   exclusion: "The following Exclusions apply to Section I.B. Coverage B – Umbrella Liability

19   Insurance; This policy does not apply to:"

---

**13.    Fines or Penalties:**

Any criminal, civil, or administrative fine or penalty.

---

22      62.    In addition to the exclusions quoted above that are followed by the Excess

23   Policies by operation of the follow-form provisions, the Umbrella Policies contain the following

24   exclusion: "The following Exclusions apply to Section I.B. Coverage B – Umbrella Liability

25   Insurance; This policy does not apply to:"

---

**22.    Pollution:**

    **a.**    **BODILY INJURY**, **PROPERTY DAMAGE**, or **PERSONAL AND ADVERTISING INJURY** arising out of the actual, alleged,

---

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

21

5894 101392 4864-9059-9086 .v3

or threatened discharge, dispersal, seepage, migration, release, or escape **of POLLUTANTS**.

b.    This policy does not apply to any loss, cost, or expense arising out of any:

(1)    Request, demand, order, or statutory or regulatory requirement that any **INSURED** or others, to identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontamination, neutralize, or mitigate, or in any way respond to, or assess the effects of **POLLUTANTS**; or

(2)    **CLAIM, SUIT,** or proceeding by or on behalf of a governmental authority for damages because of identification of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating, or in any way responding to or assessing the effects of **POLLUTANTS**.

This Exclusion applies regardless of whether or not the **POLLUTION INCIDENT** was accidental, expected, gradual, intended, preventable, or sudden.

## FIRST CAUSE OF ACTION

### (Declaratory Relief: No Duty to Defend - Primary Policies)

63.    Plaintiff Gemini hereby incorporates each and every preceding paragraph into this First Cause of Action as though fully set forth at length herein.

64.    Plaintiff Gemini seeks a declaration that it does not owe Dole Enterprises defense against the Underlying Action based upon application of the provisions, terms, conditions, limitations and exclusions contained in the Primary Policies including but not limited to, the provisions, terms, conditions, limitations and exclusions quoted above.

65.    An actual and present controversy has arisen and now exists between Plaintiff Gemini and Defendant Dole Enterprises as follows:  Plaintiff Gemini contends, and said defendant disputes, that the Underlying Action presents no potential for liability coverage under the Primary Policies, and, therefore, Gemini is not obligated to defend said defendant with respect to the Underlying Action.

66.    Plaintiff Gemini requests that this Court adjudge, declare and decree that Plaintiff

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

5894 101392 4864-9059-9486 .v3

Gemini does not have a duty to defend defendant Dole Enterprises against the Underlying Action pursuant to the provisions, terms, conditions, limitations and exclusions contained in the Primary Policies.

## SECOND CAUSE OF ACTION

### (Declaratory Relief: No Duty to Indemnify - Primary Policies)

67.    Plaintiff Gemini hereby incorporates each and every preceding paragraph into this Second Cause of Action as though fully set forth at length herein.

68.    Plaintiff Gemini seeks a declaration that it does not owe Defendants Dole Enterprises or Palla Farms indemnity for the Judgment entered in the Underlying Action based upon application of the provisions, terms, conditions, limitations and exclusions contained in the Primary Policies, including but not limited to, the provisions, terms, conditions, limitations and exclusions quoted above.

69.    An actual and present controversy has arisen and now exists between Plaintiff Gemini and Defendants Dole Enterprises and Palla Farms as follows:  Plaintiff Gemini contends, and said defendants dispute, that Plaintiff Gemini does not owe indemnity for the Judgment entered in the Underlying Action based upon application of the provisions, terms, conditions, limitations and exclusions contained in the Primary Policies, including but not limited to, those the provisions, terms, conditions, limitations and exclusions quoted above.

70.    Plaintiff Gemini requests that this Court adjudge, declare and decree that Plaintiff Gemini does not owe Defendant Dole Enterprises or Palla Farms indemnity for the Judgment entered in the Underlying Action pursuant to the provisions, terms, conditions, limitations and exclusions contained in the Primary Policies.

## THIRD CAUSE OF ACTION

### (Declaratory Relief: No Duty to Defend - Excess Policies)

71.    Plaintiff Gemini hereby incorporates each and every preceding paragraph into this Third Cause of Action as though fully set forth at length herein.

72.    Plaintiff Gemini seeks a declaration that it does not owe Dole Enterprises defense against the Underlying Action based upon application of the provisions, terms, conditions,

23

Selman Leichenger Edson<br>Hsu Newman & Moore LLP<br>ATTORNEYS AT LAW

5894 101392 4864-9059-9486 .v3

1  limitations and exclusions contained in the Excess Policies including but not limited to, the

2  provisions, terms, conditions, limitations and exclusions quoted above

3      73.    An actual and present controversy has arisen and now exists between Plaintiff

4  Gemini and Defendant Dole Enterprises as follows:  Plaintiff Gemini contends, and said

5  defendant disputes, that the Underlying Action presents no potential for liability coverage under

6  the Excess Policies, and, therefore, Gemini is not obligated to defend said defendant with respect

7  to the Underlying Action.

8      74.    Plaintiff Gemini requests that this Court adjudge, declare and decree that Plaintiff

9  Gemini does not have a duty to defend defendant Dole Enterprises against the Underlying Action

10  pursuant to the provisions, terms, conditions, limitations and exclusions contained in the Excess

11  Policies.

### FORTH CAUSE OF ACTION

### (Declaratory Relief; No Duty to Indemnify - Excess Policies)

14      75.    Plaintiff Gemini hereby incorporates each and every preceding paragraph into this

15  Fourth Cause of Action as though fully set forth at length herein

16      76.    Plaintiff Gemini seeks a declaration that it does not owe Defendants Dole

17  Enterprises or Palla Farms indemnity for the Judgment entered in the Underlying Action based

18  upon application of the provisions, terms, conditions, limitations and exclusions contained in the

19  Excess Policies, including but not limited to, the provisions, terms, conditions, limitations and

20  exclusions quoted above.

21      77.    An  actual and present controversy has arisen and now exists between Plaintiff

22  Gemini and Defendants Dole Enterprises and Palla Farms as follows:  Plaintiff Gemini contends,

23  and said defendants dispute, that Plaintiff Gemini does not owe indemnity for the Judgment

24  entered in the Underlying Action based upon application of the provisions, terms, conditions,

25  limitations and exclusions contained in the Excess Policies, including but not limited to, those

26  the provisions, terms, conditions, limitations and exclusions quoted above.

27      78.    Plaintiff Gemini requests that this Court adjudge, declare and decree that Plaintiff

28  Gemini does not owe Defendant Dole Enterprises or Palla Farms indemnity for the Judgment

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

24

5894 101392 4864-9059-9186 .v3

1  entered in the Underlying Action pursuant to the provisions, terms, conditions, limitations and

2  exclusions contained in the Excess Policies

3      WHEREFORE, Plaintiff Gemini prays for judgment against Defendants, and each of

4  them, as follows:

5  **AS TO THE FIRST CAUSE OF ACTION**

6      1.    That the Court declare that Plaintiff Gemini is not obligated under the Primary

7  Policies to defend Defendant Dole Enterprises against the Underlying Action.

8      2.    For the costs of suit incurred herein; and

9      3.    For such other relief as this Court may deem just and proper.

10  **AS TO THE SECOND CAUSE OF ACTION**

11      1.    That the Court declare that Plaintiff Gemini is not obligated under the Primary

12  Policies to indemnify Defendants for the Judgment entered in the Underlying Action.

13      2.    For the costs of suit incurred herein; and

14      3.    For such other relief as this Court may deem just and proper.

15  **AS TO THE THIRD CAUSE OF ACTION**

16      1.    That the Court declare that Plaintiff Gemini is not obligated under the Excess

17  Policies to defend Defendant Dole Enterprises against the Underlying Action.

18      2.    For the costs of suit incurred herein; and

19      3.    For such other relief as this Court may deem just and proper.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

25

GEMINI'S COMPLAINT

1

## AS TO THE FOURTH CAUSE OF ACTION

2     1.     That the Court declare that Plaintiff Gemini is not obligated under the Excess

3  Policies to defend Defendant Dole Enterprises against the Underlying Action.

4     2.     For the costs of suit incurred herein; and

5     3.     For such other relief as this Court may deem just and proper.

6

7  DATED:  January 12, 2023                    SELMAN BREITMAN LLP

8

9                                             By: _____

10                                            JAMES R. TENERO
                                              SHERYL W. LEICHENGER
11                                            Attorneys for Plaintiff
                                              GEMINI INSURANCE COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

26

GEMINI'S COMPLAINT

5894 101392 4864-9059-9186 .v3